# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **ROBERT HOSSFELD, individually and on behalf of all others similarly situated,** ) ) ) ) | |
| **Plaintiff,** ) ) | |
| **v.** ) ) | **Case No.: 2:16-CV-2017-VEH** |
| **COMPASS BANK and MSR GROUP, LLC,** ) ) ) | |
| **Defendants.** ) | |

---

## MEMORANDUM OPINION AND ORDER

## I.    Introduction

Plaintiff Robert Hossfeld ("Mr. Hossfeld") initiated this purported class action

arising under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C.

§ 227,[1] against Defendant Compass Bank ("Compass") on December 15, 2016. (Doc.

1). On February, 24, 2071, Mr. Hossfeld filed a first amended complaint (doc. 12) that

added a second defendant–MSR Group, LLC ("MSR")–to this litigation.

---

[1]  Westlaw reports that there are several pieces of proposed legislation that, if passed, would have some impact on the TCPA, but not in a manner pertinent to this decision. These include:  the Spoofing Prevention Act, S. 134, 115th Cong. (2017), the Federal Communications Consolidated Reporting Act, S. 174, 115th Cong. (2017), the Anti-Spoofing Act, H.R. 423, 115th Cong. (2017), and the Federal Communications Commission Consolidated Reporting Act, H.R. 599, 115th Cong. (2017).

Pending before the Court is Compass's Motion To Dismiss for Lack of Standing Pursuant to the Supreme Court's Ruling in *Spokeo, Inc. v. Robins* (doc. 25) (the "Motion") filed on March 17, 2017. The Court has reviewed the parties' filings offered in support of and opposition to the Motion. (Docs. 25, 32, 35, 39, 45).[2] For the reasons set out below, the Motion is **DENIED**.

## II.  Standards

### A.  Rule 12(b)(1) Generally

As the Eleventh Circuit has explained the standard on motions to dismiss for lack of subject matter jurisdiction:

> Attacks on subject matter jurisdiction under FED. R. CIV. P. 12(b)(1) come in two forms. "Facial attacks" on the complaint "require[] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.), *cert. denied*, 449 U.S. 953, 101 S. Ct. 358, 66 L. Ed. 2d 217 (1980) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "Factual attacks," on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.*
>
> These two forms of attack differ substantially. On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion-the court must consider the allegations of the

---

[2] Portions of Doc. 25 refer to Compass's Motion To Compel Arbitration that Compass subsequently withdrew. (Docs. 29, 31). The Court has not focused on any of those now moot arguments.

<u>complaint to be true.</u> *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S. Ct. 396, 70 L. Ed. 2d 212 (1981). But when the attack is factual,

> the trial court may proceed as it never could under 12(b)(6) or FED. R. CIV. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction-its very power to hear the case-there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Id.* at 412-13 (quoting *Mortensen*, 549 F.2d at 891).

*Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (emphasis added); *see also Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) ("The district court consequently has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.").[3]

Here, the jurisdictional attack by Compass on Mr. Hossfeld's complaint is facial. (*See* Doc. 25 at 11 ("The allegations in the Amended Complaint, the

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

documents specifically alleged in the Amended Complaint, and the public records (all of which may be properly considered in a motion to dismiss), show that [Mr.] Hossfeld has not suffered any injury in fact—and certainly none traceable to a TCPA violation.")). Consequently, the Court has accepted all allegations contained in Mr. Hossfeld's first amended complaint as true.

## B. General Principles Governing Standing

"The Constitution limits the exercise of the judicial power to cases and controversies." *Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater*, 777 F.2d 598, 604 (11th Cir. 1985). "The Art. III doctrine that requires a litigant to have 'standing' to invoke the power of a federal court is perhaps the most important of these doctrines [that pertain to the case-or-controversy requirement]. 'In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.'" *Allen v. Wright*, 468 U.S. 737, 750-51 (1984) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014). An individual plaintiff has standing under the Constitution's case-or-controversy limitation in Art. III, § 2, when "(1) [the plaintiff] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action

of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

The doctrine of standing encompasses "both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Kowalski v. Tesmer*, 543 U.S. 125, 128 (2004) (internal quotation marks omitted) (quoting *Warth*, 422 U.S. at 497). "[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal[.]" *Warth*, 422 U.S. at 500. Standing, instead, is based on whether the plaintiff has "'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth*, 422 U.S. at 498-99 (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

From a prudential standpoint more particularly, "a party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Kowalski*, 543 U.S. at 129 (2004) (quoting *Warth*, 422 U.S. at 499). "This rule assumes that the party with the right has the appropriate incentive to challenge (or not challenge) governmental [or private] action and to do so with the necessary zeal and appropriate presentation." *Kowalski*, 543 U.S. at 129

(citing *Warth*, 422 U.S. at 500).

### C. *Spokeo*'s Examination of the Doctrine of Standing

Compass's Motion is primarily premised upon the Supreme Court's examination of standing and the reversal of the Ninth Circuit in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), *as revised* (May 24, 2016). Spokeo, a company that "operates a 'people search engine'", was sued in district court under the Fair Credit Reporting Act ("FCRA") when the plaintiff discovered that a search request concerning him contained inaccurate personal information. *Id.* at 1544. Determining that the plaintiff lacked standing, the district court dismissed the case. *Id.* On appeal, the Ninth Circuit reversed and the Supreme Court granted certiorari review of that standing determination. *Id.* at 1544-45, 1546.

Finding the Ninth Circuit's analysis of standing to be "incomplete," the Supreme Court "vacat[ed] the decision below and remand[ed] for the Ninth Circuit to consider *both* aspects of the injury-in-fact requirement." *Id.* at 1545 (emphasis in original). More specifically, "[t]he Ninth Circuit's analysis focused on the second characteristic (particularity), but it overlooked the first (concreteness)." *Id.* The Supreme Court expressed no opinion "as to whether the Ninth Circuit's ultimate conclusion—that Robins adequately alleged an injury in fact—was correct." *Id.* at

1550.[4]

As the Supreme Court explained the component of concreteness in *Spokeo*:

A "concrete" injury must be "*de facto*"; that is, it must actually exist. *See Black's Law Dictionary* 479 (9th ed. 2009). When we have used the adjective "concrete," we have meant to convey the usual meaning of the term—"real," and not "abstract." *Webster's Third New International Dictionary* 472 (1971); *Random House Dictionary of the English Language* 305 (1967). Concreteness, therefore, is quite different from particularization.

"Concrete" is not, however, necessarily synonymous with "tangible." Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete.

*Id.* at 1548-49 (some citations omitted).[5]

The *Spokeo* Supreme Court further instructed:

In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles. Because the doctrine of standing derives from the case-or-controversy requirement, and because that requirement in turn is grounded in historical practice, <u>it is instructive to consider whether an alleged</u> <u>intangible harm has a close relationship to a harm that has traditionally</u>

---

[4] On remand from the Supreme Court, the Ninth Circuit did not retreat from its prior conclusion that the plaintiff's FCRA allegations adequately established an injury in fact. *See Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1118 (9th Cir. 2017) ("We are satisfied that Robins has alleged injuries that are sufficiently concrete for the purposes of Article III.").

[5] An easily recognized intangible harm is psychological injury or emotional distress. *See Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 476 (11th Cir. 1999) (discussing intangible emotional harm caused by humiliation and insult in the context of a § 1981 discrimination lawsuit). Tangible harms are injuries that are subject to a more objective measurement such as "financial, property, or physical harms." *Ferrill*, 168 F.3d at 476.

been regarded as providing a basis for a lawsuit in English or American courts. *See Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 775-777, 120 S. Ct. 1858, 146 L. Ed. 2d 836 (2000). In addition, because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important. Thus, we said in *Lujan* that Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." 504 U.S., at 578, 112 S. Ct. 2130. Similarly, Justice Kennedy's concurrence in that case explained that "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id.*, at 580, 112 S. Ct. 2130 (opinion concurring in part and concurring in judgment).

*Id.* at 1549 (emphasis added).

Finally, in illustrating the meaning of these (and other) principles of concreteness, the Supreme Court provided two examples of conceivable violations of FCRA that would lack the level of concreteness necessary to satisfy Article III's injury-in-fact framework:

On the one hand, Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk. On the other hand, Robins cannot satisfy the demands of Article III by alleging a bare procedural violation. A violation of one of the FCRA's procedural requirements may result in no harm. For example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate. In addition, not all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm.

*Id.* at 1550 (emphasis added).

## III.    Analysis

With the foregoing standards in mind, the Court turns to an evaluation of Mr. Hossfeld's TCPA allegations as they pertain to standing and the merits of Compass's Motion. Compass raises two primary issues in its initial brief. First, "[Mr.] Hossfeld has not suffered a concrete and particularized injury in fact, denying this Court subject matter jurisdiction over this case." (Doc. 25 at 12 (emphasis omitted)). Second, "[e]ven assuming [Mr.] Hossfeld has suffered an injury fact, such an injury is not traceable to any alleged violation of the TCPA and would occur anytime [Mr.] Hossfeld receives a phone call—even those that are TCPA compliant." (*Id.* at 16 (emphasis omitted)).

### A.    Injury-In-Fact Assessment

#### 1.    Mr. Hossfeld's TCPA Allegations

Mr. Hossfeld asserts that Compass (with MSR acting as its agent) (doc. 12 at 4 ¶ 17) placed "unsolicited, automatically dialed calls to his cellular telephone from the number '855-271-7383.'" (*Id.* ¶ 20). This first occurred on April 2, 2016. *Id.* Mr. Hossfeld "does not have any current relationship with Defendants, and has not for over thirteen years, if ever." (*Id.* ¶ 21).

"[T]he operator named Molly asked whether [Mr. Hossfeld] ever visited BBVA

Compass in Temple, Texas." *Id.* Mr. Hossfeld alleges that he "expressly notified MSR and Compass that they had reached the wrong person and requested not to be called during this first unsolicited call." (*Id.* at 5 ¶ 22).

During this same call, the representative informed Mr. Hossfeld "that the call had been made with an autodialer." (*Id.* ¶ 24). Mr. Hossfeld "warned [the representative] that the nonconsensual automated call was a violation of federal law." (*Id.* ¶ 25). Mr. Hossfeld also later in June 2016, "emailed Compass customer service and notified Compass that it had called him in violation of federal law, and threatened a lawsuit." (*Id.* ¶ 30).

On November 8, 2016, "Defendants again called [Mr. Hossfeld]'s cellular telephone number using an automatic telephone dialing system." (*Id.* at 6 ¶ 31). Mr. Hossfeld complains that "Defendants' calls were a nuisance which briefly deprived [him] of the use of his phone, invaded his personal privacy, and wasted his time." (Doc. 12 at 7 ¶ 40). "Additionally, [Mr. Hossfeld] incurred a reduction in his cellular battery life as a result of Defendants' calls." *Id.*

Mr. Hossfeld maintains that these two unsolicited automatic calls "did not have a marketing purpose" (doc. 12 at 4 ¶ 18) and violated 47 U.S.C. § 227(b)(1)(A)(iii). That section of the TCPA provides:

**(b) Restrictions on use of automated telephone equipment**

**(1) Prohibitions**

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States–

> **(A)** to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice– . . .
>
>> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States[.]

47 U.S.C. § 227(b)(1)(A)(iii).

In *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012), the Supreme Court described the congressional findings for passing the TCPA:

> In enacting the TCPA, Congress made several findings relevant here. "Unrestricted telemarketing," Congress determined, "can be an intrusive invasion of privacy." TCPA, 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional Findings) (internal quotation marks omitted). In particular, Congress reported, "[m]any consumers are outraged over the proliferation of intrusive, nuisance [telemarketing] calls to their homes." *Ibid.* (internal quotation marks omitted).

> "[A]utomated or prerecorded telephone calls" made to private residences, Congress found, were rightly regarded by recipients as "an invasion of privacy." *Ibid.* (internal quotation marks omitted). Although over half the States had enacted statutes restricting telemarketing, Congress believed that federal law was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations." *Ibid.* (internal quotation marks omitted). *See also* S. REP. NO. 102–178, p. 3 (1991), 1991 U.S.C.C.A.N. 1968, 1970 ("[B]ecause States do not have jurisdiction over interstate calls[,] [m]any States have expressed a desire for Federal legislation . . . .").

*Mims*, 565 U.S. at 372-73; *see also* H.R. REP. NO. 102-317, 1991 WL 245201, at *10 (Nov. 15, 1991) ("The preponderance of the evidence documents the existence of a national problem and argues persuasively in favor of federal intervention balancing the privacy rights of the individual and the commercial speech rights of the telemarketer.").

### 2. Mr. Hossfeld's TCPA Allegations Are Sufficiently Particularized.

In *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245 (11th Cir. 2015), the Eleventh Circuit reversed the district court's absence of standing determination in the context of a pre-*Spokeo* TCPA complaint. The alleged facts involved one unsolicited fax sent to a line belonging to a plaintiff business that was neither seen nor printed by an employee of the plaintiff.[6] 781 F.3d at 1250.

---

[6] The Eleventh Circuit has not addressed a plaintiff's standing to sue for an unauthorized telephone call under the TCPA in a binding (or non-binding) decision post-*Spokeo*. (Doc. 25 at 5-6). Published and unpublished panels of the Eleventh Circuit have addressed standing in

Concerning particularity, the Eleventh Circuit explained that "[t]h[e] occupation of Plaintiff's fax machine is among the injuries intended to be prevented by the statute <u>and is sufficiently personal or particularized to Palm Beach Golf</u> as to provide standing." *Id.* at 1252 (emphasis added). In arriving at this conclusion, it did not matter that the plaintiff had not seen the faxes. The key consideration was, instead, that the unsolicited transmission "rendered [the plaintiff's] fax machine 'unavailable for legitimate business messages while processing . . . the junk fax.'" 781 F.3d at 1252 (quoting H.R. REP. NO. 102-317, 1991 WL 245201, at *10). The Eleventh Circuit ultimately held that because the plaintiff's "fax machine was occupied during [the] successful transmission of the unsolicited fax advertisement[,] . . . [the plaintiff] has suffered a cognizable, particularized, and personal injury, [and] it has Article III

_____

situations not involving the TCPA post-*Spokeo*. *See, e.g., Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998, 1002 (11th Cir. 2016) (holding that plaintiff lacked standing to sue for violation of New York mortgage law due to a "delay in recording the certificate of discharge" because he showed no concrete harm caused by that statutory violation); *Church v. Accretive Health, Inc.*, 654 F. App'x 990, 994 (11th Cir. 2016) (concluding that plaintiff had standing to sue for disclosure violation under the Fair Debt Collection Practices Act because "through the FDCPA, Congress has created a new right—the right to receive the required disclosures in communications governed by the FDCPA—and a new injury—not receiving such disclosures."); *Meeks v. Ocwen Loan Servicing LLC*, 681 F. App'x 791, 793 (11th Cir. 2017) (finding that plaintiff lacked standing to sue for receipt of insufficient form under Regulation X of the Real Estate Settlement Practices Act because he "suffered at most 'a bare procedural violation,' and he cannot show that he suffered a real, concrete injury from Ocwen's actions"). However, *Spokeo* makes it clear that "[i]n determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." Therefore, the helpfulness of these (and other) non-TCPA decisions for resolving the disputed concreteness of Mr. Hollfeld's TCPA claim is somewhat limited.

standing." 781 F.3d at 1253.

Post-*Spokeo*, the Eleventh Circuit reaffirmed its *Palm Beach* injury-in-fact holding in another junk-fax case arising under the TCPA and agreed with the district court that the plaintiff clinic had standing to bring the TCPA claim. *See Florence Endocrine Clinic, PLLC v. Arriva Med., LLC*, 858 F.3d 1362, 1366 (11th Cir. 2017) ("Under our precedent, the clinic suffered an injury in fact."); *id.* ("Because the clinic's fax machine was occupied and rendered unavailable for legitimate business while processing the unsolicited fax, the clinic established that it suffered a concrete injury."). After confirming the existence of standing, the Eleventh Circuit affirmed the district court's merits-based dismissal of the case for failure to state a claim. *Id.* at 1367. More specifically, the Eleventh Circuit found that "[t]he faxes sent by Arriva to the clinic are not 'advertisements' within the meaning of the Act[; instead,] [e]ach fax relates to a specific order already placed by a patient of the clinic and requests only that the doctor of the patient fill out an order form to facilitate a purchase made by that patient." *Id.*

Consistent with *Palm Beach* and *Arriva*, Mr. Hossfeld has undoubtedly cleared the particularity hurdle and asserted a personal connection to the harm claimed that is sufficient to establish this prong of the standing requirement. The two unsolicited calls described in Ms. Hossfeld's first amended complaint were made to his personal

cell phone number. (Doc. 12 at 4 ¶ 17). Mr. Hossfeld further alleges how those automatically-dialed calls impacted him personally–they temporarily deprived him from being able to use his cell phone, invaded his privacy, wasted his time, and reduced his cell phone's battery's life. (Doc. 12 at 7 ¶ 40).

Although Compass may not have intended for Mr. Hossfeld to personally receive these survey calls (doc. 25 at 6), liability for using an autodialing system under § 227(b)(1)(A)(iii) does not provide a statutory exception if someone other than the defendant's intended recipient answers or receives the call. Also, none of the standing cases cited by Compass evaluates particularity under the TCPA through the lens of what a defendant did or did not intend regarding the actual recipient of any unsolicited calls.

One of the post-*Spokeo* TCPA cases relied upon by Compass–*Smith v. Aitima Med. Equip., Inc.*, No. ED CV 16-00339-AB (DTBx), 2016 WL 4618780 (C.D. Cal. July 29, 2016) (doc. 25 at 13)–underscores the existence of particularity here. As the court explained particularity under the TCPA in *Smith*:

> Defendant is mixing particularization with concreteness, two distinct requirements for standing. Particularization requires that an injury "affect the plaintiff in a personal and individual[] way." *Spokeo*, 136 S. Ct. at 1548. In Plaintiff's Complaint, she states that "Plaintiff and all members of the proposed class have been harmed," before listing the alleged harms. Prior to this allegation of harm, Plaintiff alleged that she received a phone call from Defendant without providing prior consent.

> The Court finds that the statement of harm is sufficiently particularized to show that Plaintiff alleges she herself, in addition to the members of the class, has been harmed by Defendant's unauthorized conduct.

2016 WL 4618780, at *3 (some citations omitted) (emphasis added) (alteration added to correctly reflect quoted language from *Spokeo*). Mr. Hossfeld's allegations that Compass made unsolicited, automatically dialed calls to his cellular telephone number and the alleged injuries that he, himself, experienced on account of those calls, are substantively consistent with those that the *Smith* court found to be "sufficiently particularized[.]"

Thus, particularity is established and the Court now considers the closer question of concreteness.

### 3. Mr. Hossfeld's TCPA Allegations Are Sufficiently Concrete.

As *Spokeo* confirms, concreteness requires that Mr. Hossfeld allegedly endure a harm that is substantial in an Article III sense. Simply asserting facts that plausibly show a TCPA statutory violation is not enough to trigger constitutional concreteness. Instead, *Spokeo* cautions that whenever a plaintiff, like Mr. Hossfeld, is claiming intangible harm from a statutory violation, this Court must additionally consider: (i) whether such intangible injury is closely connected to harms that are traditionally cognizable under English and/or American jurisprudence; and (ii) whether such

intangible (and otherwise constitutionally inadequate) injury is one that, in the judgment of Congress, should be elevated to a harm that meets the Article III threshold.

The thrust of Compass's contention is that Mr. Hossfeld has, at most, suffered a *de minimis* injury which falls way below a persistent pattern of invasive, unsolicited calling (necessary to plausibly support an invasion of privacy or nuisance common-law claim) that the TCPA is designed to cover. (Doc. 25 at 12-14); (*see id.* at 15-16 ("Two, isolated, non-telemarketing [calls], separated by six months do[] not rise to the level of a Constitutional 'injury in fact' and plaintiff alleges no facts to establish such an 'injury in fact' beyond a conclusory statement about 'nuisance.'")). The parties have provided the Court with numerous cases to consider as persuasive authority when deciding this post-*Spokeo* issue under the TCPA. Ultimately, the Court rejects those cases that, utilizing a *de minimis* approach to evaluating concreteness, have found that a TCPA claim lacks that component when a plaintiff is complaining about only one or two unsolicited communications via a telephone call, voicemail message, text message, or facsimile. The Court, instead, adopts the Third Circuit's reasoning in *Susinno v. Work Out World Inc.*, 862 F.3d 346 (3d Cir. 2017), and finds that Mr. Hossfeld's allegations of at least one unauthorized phone

call show a sufficiently concrete injury.[7] The Court discusses its reasoning in more detail below.

*Susinno* involved a plaintiff suing under the TCPA for a "single solicitation" to her cell phone from a fitness company that resulted in the "receipt of [a] call and voicemail[.]" 862 F.3d at 348. The district court dismissed the plaintiff's case for lack of subject matter jurisdiction and the Third Circuit reversed. *Id.* The Third Circuit framed the two questions on appeal as: "Does the TCPA prohibit the conduct alleged by Susinno? And if it does, is the harm alleged sufficiently concrete for Susinno to have standing to sue under Article III of the United States Constitution?" *Id.*

After addressing the first question affirmatively,[8] the Third Circuit turned to the issue of concreteness. Before evaluating the sufficiency of the TCPA allegations, the Third Circuit summarized its post-*Spokeo* holding in the FCRA case of *In re Horizon Healthcare Services Inc. Data Breach Litigation*, 846 F.3d 625 (3d Cir.

_____

[7] The Court acknowledges Compass's point that Mr. Hossfeld purposefully provided an incorrect telephone number for the do-not call list in his email to Compass and that, as a result, the second call that he received from Compass was caused by his own actions. (Doc. 25 at 9-10); (*see also* Doc. 25-1 at 3 (attaching email documentation indicating "Phone: 2220000000")). Because the Court finds that the initial automated call allegedly authorized by Compass is sufficiently concrete to confer standing, it does not reach an analysis of the second call.

[8] The defendant in *Susinno* had argued that because the plaintiff did not incur a charge for the call to her cell phone, the TCPA did not apply. Relying upon the Eleventh Circuit's decision in *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1257 (11th Cir. 2014), the Third Circuit rejected the defendant's construction of 47 U.S.C. § 227(b)(1) as "strained" and counter to the grammatical rule of the last antecedent. 862 F.3d at 349.

2017):

> We summarize *Horizon*'s rule as follows. When one sues under
> a statute alleging "the very injury [the statute] is intended to prevent,"
> and the injury "has a close relationship to a harm ... traditionally ...
> providing a basis for a lawsuit in English or American courts," a
> concrete injury has been pleaded. *Id.* at 639-40. We do not, and need
> not, conclude that intangible injuries falling short of this standard are
> never concrete. *See Horizon*, 846 F.3d at 638 (declining to determine
> minimum standard of concreteness where unnecessary to decide case).
> Rather, we simply observe that all intangible injuries that meet this
> standard *are* concrete.

862 F.3d at 351 (emphasis in original).

Then applying its *Horizon* framework to the TCPA allegations before it, the

Third Circuit found the presence of concreteness for two reasons:

> First, Congress squarely identified this injury. The TCPA
> addresses itself directly to single prerecorded calls from cell phones, and
> states that its prohibition acts "in the interest of [ ] privacy rights." 47
> U.S.C. § 227(b)(2)(C). The congressional findings in support of the
> TCPA likewise refer to complaints that "automated or prerecorded
> telephone calls are a nuisance [and] ... an invasion of privacy." Pub. L.
> 102–243, § 2. We therefore agree with Susinno that <u>in asserting
> "nuisance and invasion of privacy" resulting from a single prerecorded
> telephone call, her complaint asserts "the very harm that Congress
> sought to prevent," arising from prototypical conduct proscribed by the
> TCPA</u>. App. 11 (First Amended Complaint); *see also Van Patten v.
> Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017)
> (finding two unwanted text messages constituted a concrete injury under
> the TCPA, as they "present the precise harm and infringe the same
> privacy interests Congress sought to protect").

Having determined that the amended complaint pleaded an injury
Congress aimed to prevent, we turn next to the historical inquiry. We

think Susinno has satisfied this test as well. As we said in *Horizon*, a close relationship does not require that the newly proscribed conduct would "give rise to a cause of action under common law." 846 F.3d at 639. But it does require that newly established causes of action protect essentially the same interests that traditional causes of action sought to protect. The Court of Appeals for the Ninth Circuit has opined that TCPA claims closely relate to traditional claims for "invasions of privacy, intrusion upon seclusion, and nuisance [which] have long been heard by American courts." *Van Patten*, 847 F.3d at 1043. In our view, <u>intrusion upon seclusion best fits the facts of this case</u>.

*Susinno*, 862 F.3d at 351 (emphasis added).

Regarding its second reason, the *Susinno* court further explained why applying a *de minimis* rule to determine concreteness under the TCPA is inappropriate under *Spokeo* because of Congress's power (in certain situations) to legislatively promote previously inadequate (*i.e.*, *de minimis*) harms to legally adequate (*i.e.*, non-*de minimis*) ones. As the *Susinno* court more specifically stated:

> Traditionally, a plaintiff's "privacy is invaded" for the purpose of an intrusion upon seclusion claim by telephone calls "only when [such] calls are repeated with such persistence and frequency as to amount to . . . hounding." *Intrusion upon Seclusion, Restatement (Second) of Torts* § 652B, cmt d (1977). The *Second Restatement* suggests that because "two or three" calls would not be "highly offensive to the ordinary reasonable [person]," they traditionally would provide no cause of action. *Id.* Yet when Congress found that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients," *Van Patten*, 847 F.3d at 1043, it sought to protect the same interests implicated in the traditional common law cause of action. Put differently, Congress was not inventing a new theory of injury when it enacted the TCPA. <u>Rather, it elevated a harm that, while "previously inadequate in law," was of the</u>

> same character of previously existing "legally cognizable injuries."
> *Spokeo*, 136 S. Ct. at 1549. *Spokeo* addressed, and approved, such a
> choice by Congress.

*Susinno*, 862 F.3d at 351-52 (footnote omitted) (emphasis added); *see also Etzel v. Hooters of Am.*, *LLC*, 223 F. Supp. 3d 1306, 1311, 1312 (N.D. Ga. 2016) (rejecting application of *de minimis* rule to "a lone text message after withdrawal of consent" (internal quotation marks omitted) given "the [unambiguous] language of the TCPA . . . that a violation can occur from a single call" under § 227(b)(1)(A) in contrast to § 227(c)(5) which requires more than one call); *Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 232 F.3d 854, 859 (11th Cir. 2000) ("[W]hen Congress uses different language in similar sections, it intends different meanings." (citing *United States v. Gonzales*, 520 U.S. 1, 5 (1997))); *compare* 47 U.S.C. § 227(b)(1)(A) ("It shall be unlawful for any person . . . to make any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . ."), *with* 47 U.S.C. § 227(c)(5) (requiring that a person "receive[] more than one telephone call within any 12-month period . . . ." to bring a private right of action); *cf. also Tillman v. Ally Fin. Inc.*, No. 2:16-CV-313-FTM-99CM, 2016 WL 6996113, at *4 (M.D. Fla. Nov. 30, 2016) (finding unpersuasive defendant's reliance upon a *de minimis* rule to TCPA in light of binding Supreme Court precedent rejecting a similar argument that "an injury must be 'significant'; [and, instead, finding that] a small injury, 'an identiable trifle,' is

sufficient to confer standing" (quoting *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1351 (11th Cir. 2009) (quoting in turn *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 689 n.14 (1973))).

Guided by *Susinno* which comparably involved one unsolicited call to the plaintiff's cell phone and a related voicemail message, this Court similarly holds that the first unauthorized communication experience by Mr. Hossfeld–consisting of the call from Compass to his cell phone number and the subsequent telephone conversation with a representative–is not merely a procedural or technical violation of the TCPA. Instead, the contact falls squarely within the scope of what the TCPA makes unlawful under § 227(b)(1)(A)(iii)–a non-emergency call made to Mr. Hossfeld's cell phone number without his permission using an automatic telephone dialing system.

The Court acknowledges Compass's contention that Mr. Hossfeld's removal of all telemarketing allegations from his first amended complaint means he cannot show an injury in fact. (Doc. 25 at 2-7). Compass basis this argument upon the TCPA's critical focus on curbing intrusive telemarketing practices. (Doc. 25 at 2-7). However, in contrast to § 227(b)(1)(C) (the TCPA's junk-fax provision analyzed by

the Eleventh Circuit post-*Spokeo* in *Arriva*, *supra*)[9] that makes unsolicited faxes <u>with an advertising purpose</u> unlawful, § 227(b)(1)(A)(iii) (the TCPA's automated-dialing provision) is more broadly worded. Importantly, the automated-dialing provision includes no reference to "telephone solicitation" (a term defined under § 227(a)(4) of the TCPA to mean a "call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services . . . ."), advertising, or other telemarketing language in order to trigger liability. *See Iraola*, 232 F.3d at 859 (utilizing different wording within sections of the same law signifies a difference in statutory meaning).

Consistent with this statutory distinction between § 227(b)(1)(C) and § 227(b)(1)(A)(iii), Compass concedes that "it is true that certain prescribed [sic] non-telemarketing calls can still be actionable under the TCPA . . . ." (Doc. 25 at 5). Further, the stated purpose of the call–whether driven by telemarketing or survey-related–is ultimately of no consequence to the Article III harm caused by the intrusion associated with such an unsolicited automated call.

The Court additionally agrees with *Susinno*'s historical assessment that the

---

[9] As discussed above, <u>*Arriva* confirmed the presence of Article III standing despite the non-advertising purpose of the faxes sent to the plaintiff clinic</u>. Instead, a merits-based dismissal for the failure to state a claim was appropriate because the faxes were sent to facilitate medication orders for the patients of the clinic and not to advertise.

intangible harm resulting from the alleged TCPA violation shares a "close relationship to[,]" *Spokeo*, 136 S. Ct. at 1549, and most closely mirrors an intrusion upon seclusion privacy claim. As set out in H.R. REP. NO. 102-317, concerning unauthorized automated calls:

> Once a phone connection is made, automatic dialing systems can "seize" a recipient's telephone line and not release it until the prerecorded message is played, even when the called party hangs up. This capability makes these systems not only <u>intrusive</u>, but, in an emergency, potentially dangerous as well. Despite these limitations–and the negative public image associated with these systems and the companies that use them–ADRMP use has not declined substantially.

*Id.*, 1991 WL 245201, at *10 (emphasis added); *cf. also Etzel*, 223 F. Supp. 3d at 1312 (finding that, to the extent *Palm Beach*'s junk-fax concreteness holding is inapplicable in the context of an unauthorized text, the plaintiff has alternatively satisfied concreteness in asserting an invasion-of-privacy injury and experiencing a "text . . . [that] <u>intruded upon</u> and occupied the capacity of Plaintiff's cell phone") (emphasis added).

Furthermore, the Eleventh Circuit recently concluded that a claim arising under the Video Privacy Protection Act ("VPPA")[10] was concrete, given its connection to historical privacy rights and, more specifically, the intrusion upon seclusion privacy

---

[10] The VPPA creates a private cause of action for the wrongful disclosure of video tape rental or purchase records. 18 U.S.C. § 2710(c).

claim:

> Indeed, the VPPA's creation of a cause of action for this type of an invasion of privacy "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S. Ct. at 1549. <u>Since the early 1900s, "the existence of a right of privacy [has been] recognized in the great majority of the American jurisdictions that have considered the question.</u>" *Restatement (Second) of Torts* § 652A cmt. a. (Am. Law Inst. 1977); *see also U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763, 109 S. Ct. 1468, 103 L. Ed. 2d 774 (1989) ("[B]oth the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person."). Further, <u>in the tort of intrusion upon seclusion, "[t]he intrusion itself makes the defendant subject to liability, even though there is no publication or other use," meaning a showing of additional harm is not necessary to create liability.</u> *Restatement (Second) of Torts* § 652B cmt. b (emphasis added). The VPPA is similar but subjects a video service provider to liability only when that provider actually discloses the consumer's personal information. Supreme Court precedent has recognized in the privacy context that an individual has an interest in preventing disclosure of personal information. *See Reporters Comm. for Freedom of the Press*, 489 U.S. at 762, 109 S. Ct. 1468 ("[C]ases sometimes characterized as protecting 'privacy' have in fact involved ... the individual interest in avoiding disclosure of personal matters, ...." (quoting *Whalen v. Roe*, 429 U.S. 589, 598-600, 97 S. Ct. 869, 51 L. Ed. 2d 64 (1977))). Accordingly, we hold that a plaintiff such as Perry has satisfied the concreteness requirement of Article III standing, where the plaintiff alleges a violation of the VPPA for a wrongful disclosure.

*Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1340-41 (11th Cir. 2017) (footnote omitted) (emphasis added).

Finally, while Compass is correct that Mr. Hossfeld has not alleged a persistent

pattern or "proliferation of intrusive" automated calls to his cell phone–a primary concern of Congress in passing the TCPA as observed in *Mims*–that argument ignores the plain wording of the statute and *Spokeo*'s express reaffirmation of *Lujan*'s earlier recognition that Congress may elevate an otherwise inadequate harm (having a sufficient nexus to a historically-recognized legal claim), such as a single unsolicited call (and resulting telephone conversation), to concrete status. *Cf. Lexmark*, 134 S. Ct. at 1388 ("We do not ask whether in our judgment Congress should have authorized Static Control's suit, but whether Congress in fact did so."); *id.* ("Just as a court cannot apply its independent policy judgment to recognize a cause of action that Congress has denied, <u>it cannot limit a cause of action that Congress has created merely because 'prudence' dictates</u>.") (citation omitted) (emphasis added).

Thus, concreteness is established and the Court now considers the injury-in-fact issue of traceability.

### B.     Mr. Hossfeld's TCPA Allegations Meet the Fairly-Traceable Test.

Compass alternatively contends that, even if Mr. Hossfeld satisfies the particularity and concreteness standards, he still lacks standing because he cannot show that his injury is "'traceable to the challenged conduct of the defendant.'" (Doc. 25 at 16 (quoting *Spokeo*, 136 S. Ct. at 1547)). Compass defines the challenged

conduct as calling Mr. Hossfeld's cell phone number by way of an automated system.

Compass relies upon *Ewing v. SQM US, Inc.*, 211 F. Supp. 3d 1289 (S.D. Cal. 2016),

and *Romero v. Dep't Stores Nat'l Bank*, 199 F. Supp. 3d 1256 (S.D. Cal. 2016),

*appealed docketed*, No. 16-56265 (9th Cir. Sept. 1, 2016),[11] as persuasive support for

its traceability argument.

In *Ewing*, the district court found that the TCPA complaint did not establish

"an injury in fact traceable to Defendants' violation of the TCPA[.]" 211 F. Supp. 3d

at 1293. More specifically, the *Ewing* court reasoned that a traceable injury could not

be shown because the "Plaintiff does not, and cannot, allege that Defendants' use of

an ATDS [or autodialer] to dial his number caused him to incur a charge that he

would not have incurred had Defendants manually dialed his number, which would

not have violated the TCPA." *Id.* When considering the plaintiff's other claimed

injuries of wasting time and depleting his cell phone battery, the *Ewing* court

similarly concluded that the plaintiff:

> would have been no better off had Defendants dialed his number
> manually (in which case they would have refrained from violating the
> TCPA). He would have had to expend the same amount of time
> answering and addressing Defendants' manually dialed telephone call
> and would have incurred the same amount of battery depletion.

211 F. Supp. 3d at 1293.

---

[11] *Ewing* and *Romero* were decided by the same district court judge.

The *Romero* court likewise found the absence of traceability:

Moreover, the specific facts of this case reveal that <u>any harm suffered by Plaintiff is unconnected to the alleged TCPA violations</u>. Defendants here were creditors of Plaintiff and were attempting to collect a debt. They were calling Plaintiff's cell phone because that was the only telephone number she provided them. <u>Although these calls seeking to collect debts may have been stressful, aggravating, and occupied Plaintiff's time, that injury is completely unrelated to Defendants' use of an ATDS [or autodialer] to dial her number. Plaintiff would have been no better off had Defendants dialed her telephone number manually</u>. "A plaintiff who would have been no better off had the defendant refrained from the unlawful acts of which the plaintiff is complaining does not have standing under Article III of the Constitution to challenge those acts in a suit in federal court." *McNamara v. City of Chicago*, 138 F.3d 1219, 1221 (7th Cir. 1998). Further, that the use of an ATDS may have allowed Defendants to call a greater number of debtors more efficiently did not cause any harm to Plaintiff. *See Silha v. ACT, Inc.*, 807 F.3d 169, 174-75 (7th Cir. 2015) ("[A] plaintiff's claim of injury in fact cannot be based solely on a defendant's gain; it must be based on a plaintiff's loss."). In other words, to use the language from *Spokeo*, Plaintiff's alleged concrete harm was divorced from the alleged violation of the TCPA. *See Spokeo*, 136 S. Ct. at 1549 (holding that "a bare procedural violation, divorced from any concrete harm, [does not] satisfy the injury-in-fact requirement of Article III"). Accordingly, Plaintiff has not and cannot satisfy the injury-in-fact requirement of Article III.

*Romero*, 199 F. Supp. 3d at 1265 (emphasis added).

Mr. Hossfeld's opposition suggests that this Court should disregard *Ewing* and *Romero* as unpersuasive. Based upon the Supreme Court's discussion of traceability in *Allen*, *Lujan*, and the additional authorities discussed below, this Court agrees.

In *Allen*, the plaintiffs were challenging "the IRS's grant of tax exemptions to

some racially discriminatory schools." 468 U.S. at 757. One of the injuries sought to be redressed in their lawsuit was "their children's diminished ability to receive an education in a racially integrated school[.]" *Allen*, 468 U.S. at 756. The Supreme Court rejected the plaintiffs' standing tied to this injury as "not fairly traceable to the Government conduct [being] challenge[d] as unlawful." *Allen*, 468 U.S. at 757. More specifically, the Supreme Court reasoned:

> The line of causation between that conduct and desegregation of respondents' schools is attenuated at best. From the perspective of the IRS, the injury to respondents is highly indirect and "results from the independent action of some third party not before the court," *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S., at 42, 96 S. Ct., at 1926. As the Court pointed out in *Warth v. Seldin*, 422 U.S., at 505, 95 S. Ct., at 2208 "the indirectness of the injury . . . may make it substantially more difficult to meet the minimum requirement of Art. III . . . ."

*Allen*, 468 U.S. at 757-58; *see also id.*, 468 U.S. at 759 ("The links in the chain of causation between the challenged Government conduct and the asserted injury are far too weak for the chain as a whole to sustain respondents' standing.").

The Supreme Court also relied upon separation of powers concerns when explaining lack of traceability:

> The idea of separation of powers that underlies standing doctrine explains why our cases preclude the conclusion that respondents' alleged injury "fairly can be traced to the challenged action" of the IRS. *Simon v. Eastern Kentucky Welfare Rights Org., supra,* at 41, 96 S. Ct., at 1926. <u>That conclusion would pave the way generally for suits</u>

challenging, not specifically identifiable Government violations of law, but the particular programs agencies establish to carry out their legal obligations. Such suits, even when premised on allegations of several instances of violations of law, are rarely if ever appropriate for federal-court adjudication.

"Carried to its logical end, [respondents'] approach would have the federal courts as virtually continuing monitors of the wisdom and soundness of Executive action; such a role is appropriate for the Congress acting through its committees and the 'power of the purse'; it is not the role of the judiciary, absent actual present or immediately threatened injury resulting from unlawful governmental action." *Laird v. Tatum*, 408 U.S., at 15, 92 S. Ct., at 2326.

*Allen*, 468 U.S. at 759-760 (emphasis added).

Here, in contrast to *Allen*, the link between Mr. Hossfeld's intrusion injury and Compass's conduct is neither speculative, nor attenuated, nor indirect. Instead, Compass's use of the autodialer to call Mr. Hossfeld's cell phone number is the direct source that led to his claimed injury. *See Ung v. Universal Acceptance Corp.*, 198 F. Supp. 3d 1036, 1040 (D. Minn. 2016) ("In order to show traceability, Ung must show only that Universal's calls were the source of his harm."); *id.* ("It is readily apparent that the only harm alleged in this case resulted from Universal's conduct, and not from the actions of any third parties."); *see also Lujan*, 504 U.S. at 560 ("[T]here must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the

court.'" (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976))).

Additionally, unlike *Allen*, there is no separation of powers concern here. Mr. Hossfeld is challenging conduct by, a private actor, Compass, made unlawful by Congress when it passed the TCPA. While traceability is essential in all federal lawsuits, the Court's own research shows that the more common context for it to become a disputed issue is when a plaintiff contests governmental action, *e.g.*, *Warth*, *Simon*, *Allen*, and *Lujan*.

Therefore, the Court is in agreement with those other district courts that have found *Romero* and *Ewing* to be unpersuasive. *See, e.g., LaVigne v. First Cmty. Bancshares, Inc.*, 215 F. Supp. 3d 1138, 1147 (D.N.M. 2016) (agreeing with the plaintiff that *Romero* improperly "conflates the means through which [the defendant] (allegedly) violated the TCPA with the harm resulting from that alleged violation") (emphasis omitted); *Mohamed v. Off Lease Only, Inc.*, No. 15-23352-CIV, 2017 WL 1080342, at *3 (S.D. Fla. Mar. 22, 2017) ("respectfully disagree[ing] with the *Romero* and *Ewing* decisions" and quoting *LaVigne*'s reason for rejecting *Romero* regarding traceability). Indeed, taking the traceability conclusion reached in *Romero* and *Ewing* to its logical extreme, this Court (like others) has doubts that any plaintiff would ever meet the traceability threshold under the TCPA. *Cf. LaVigne*, 215 F. Supp. 3d at 1143

("Under *Romero*, it appears to be nearly impossible for a plaintiff to allege a private right of action under the TCPA for automated solicitation calls.").

Thus, this Court concludes that Mr. Hossfeld's intrusion injury is fairly traceable to Compass's alleged violation of the TCPA's automated-dialing provision.

## C. Compass's Reply Does Not Alter This Court's Conclusion Concerning Mr. Hossfeld's Standing.

In its reply, Compass reasserts that Mr. Hossfeld's first amended complaint lacks particularity, concreteness, and traceability. (Doc. 35 at 2-9). Compass additionally questions Mr. Hossfeld's reliance upon *Palm Beach* as it pertains to the issues of concreteness and traceability. (Doc. 35 at 9-10). Finally, relying upon *Stoops v. Wells Fargo Bank*, *N.A.*, 197 F. Supp. 3d 782 (W.D. Pa. 2016), Compass expressly invokes the concept of prudential standing–more specifically, the zone-of-interests prong–as an additional reason to dismiss this action.[12] Nothing contained in Compass's reply causes this Court to change its mind about Mr. Hossfeld's standing to bring this TCPA action.

Rather than restating its reasoning for those issues already addressed exhaustively above, the Court summarizes that, consistent with *Palm Beach*, *Arriva*,

---

[12] To be clear, Compass cited to *Stoops* in its initial brief (doc. 25 at 9, 15) to further its injury-in-fact position, but did not expressly discuss in that document the concept of prudential standing and/or the zone-of-interests test.

and *Smith*, Mr. Hossfeld's intrusion injury is sufficiently particularized in that it pertains to him. Relying primarily upon *Susinno* and bolstered by *Perry*'s acknowledgment that traditional privacy rights are an appropriate source of law to bestow concreteness post-*Spokeo*, Mr. Hossfeld's intrusion injury–in the form of a single unauthorized and automatically-dialed telephone call to his cell phone (and the related telephone conversation)–is sufficiently concrete.

The Court is not persuaded to follow the traceability holding first adopted in *Romero* and subsequently followed in *Ewing*.[13] Instead, the Court finds that Mr. Hossfeld's intrusion injury is fairly traceable to Compass's alleged unlawful conduct under the TCPA in light of *Allen*, *Lujan*, and *Ung*. Further, because *Palm Beach* is not pivotal to this Court's analysis of concreteness or traceability of an unauthorized telephone call under the TCPA, Compass's objections to Mr. Hossfeld's reliance upon that pre-*Spokeo* junk-fax decision for those issues are moot.

Finally–as discussed in greater detail below–the Court is not persuaded to dismiss this action on the basis of *Stoops* or the doctrine of prudential standing. In *Stoops*, the plaintiff "bought and activated prepaid cell phones[.]" 197 F. Supp. 3d at

---

[13] The *Ewing* opinion does not expressly reference *Romero*, but does analyze the absence of traceability in a similar manner. *Compare Romero*, 199 F. Supp. 3d at 1265 ("Plaintiff would have been no better off had Defendants dialed her telephone number manually."), *with Ewing*, 211 F. Supp. 3d at 1293 ("Here, Mr. Ewing would have been no better off had Defendants dialed his number manually (in which case they would have refrained from violating the TCPA).").

787. The district court found the absence of an injury in fact on the basis of the plaintiff's claimed privacy interests because she admitted in her deposition that "her only purpose in using her cell phones [wa]s to file TCPA lawsuits[.]" 197 F. Supp. 3d at 800. Compass points to Mr. Hossfeld's "filing of seven TCPA class actions"[14] (doc. 35 at 2), his "professional plaintiff" (doc. 25 at 9) and/or his "repeat filer" (doc. 35 at 6) status, and his failure to challenge the authenticity of the email reflecting an incorrect phone number (doc. 35 at 6) as comparable to the evidence showing lack of standing in *Stoops*. However, the Court finds that the record here at the motion to dismiss stage is significantly less compelling than the summary judgment record before the court in *Stoops*. In particular, unlike Ms. Stoops, Mr. Hossfeld has not (yet) disavowed under oath any intrusion injury caused by Compass's alleged unlawful conduct.

While Compass's attorney suggests that Mr. Hossfeld is "someone clearly not

---

[14]  Mr. Hossfeld's other TCPA lawsuits that Compass has identified are:

*Salam v. Lifewatch, Inc.*, No. 1:13-CV-0935, Doc. 139, (Jan. 19, 2017) (N.D. Ill.); *Hossfeld v. Government Employees Insurance Company*, No. 1:14-CV-00876, (D. Md.); *Visser v. Caribbean Cruise Line, Inc.*, No. 1:13-CV-01029, (W.D. Mich.); *Hossfeld v. RCI, LLC*, No. 2:13-CV-03601 (D.N.J.); *Hossfeld v. Lifewatch, Inc.*, No. 7:16-CV-01614 (S.D.N.Y.); and *Hossfeld v. Elephant Insurance Company*, No. 6:16-CV-00130 (W.D. Tex.).

Doc. 25 at 8 n.7.

annoyed but instead pleased when he is called" (doc. 25 at 10), "[s]tatements by counsel in briefs are not evidence." *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980). Thus, until Mr. Hossfeld's deposition is taken (or other discovery is conducted), the Court can only speculate why Mr. Hossfeld has been a plaintiff in multiple cases and why he did not provide an accurate phone number in his June 7, 2016, email to Compass.

After deciding that the plaintiff in *Stoops* lacked constitutional standing, the district court alternatively determined that the plaintiff lacked prudential standing:

> Even if, assuming arguendo, Plaintiff had suffered an injury-in-fact, Plaintiff would still lack standing because she does not have prudential standing. *See UPS Worldwide Forwarding v. United States Postal Serv.*, 66 F.3d 621, 625 (3d Cir. 1995) ("Standing has constitutional and prudential components, both of which must be satisfied before a litigant may seek redress in the federal courts."). Prudential standing requires that: (1) "a litigant assert his or her own legal interests rather than those of third parties;" (2) "courts refrain from adjudicating abstract questions of wide public significance which amount to generalized grievances;" and (3) "a litigant demonstrate that her interests are arguably within the zone of interests intended to be protected by the statute, rule or constitutional provision on which the claim is based." *Id.* at 626 (internal quotations and alterations omitted).

*Stoops*, 197 F. Supp. 3d 782, 803-04; *cf. also Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 295 (3d Cir. 2007) ("Constitutional and prudential standing are about, respectively, the constitutional power of a federal court to resolve a dispute and the wisdom of so doing.").

The *Stoops* court focused on the third element and found the absence of prudential standing because "Plaintiff's interests, which include purchasing cell phones with the hope of receiving calls from creditors for the sole purpose of collecting statutory damages, are not 'among the sorts of interests [the TCPA was] specifically designed to protect.'" 197 F. Supp. 3d at 805 (quoting *Chem Serv., Inc. v. Envtl. Monitoring Sys. Lab.–Cincinnati*, 12 F.3d 1256, 1262 (3d Cir. 1993) (internal quotations omitted)); *see also Stoops*, 197 F. Supp. 3d at 798 ("As the parties recognize, however, the facts of the instant case have not arisen in other TCPA actions because [Ms. Stoops] has admitted that she files TCPA actions as a business.") (emphasis added). Akin to the injury-in-fact analysis above, in the absence of a more compelling record, the Court is not persuaded to extend the prudential standing holding applied in the extreme situation of *Stoops* to Mr. Hossfeld's case, especially when Compass's jurisdictional attack is facial, rather than factual.[15]

---

[15] Additionally, the Supreme Court in *Lexmark* has made it clear that a jurisdictional dismissal premised upon prudential standing is no longer appropriate when invoking the zone-of-interests test. Instead, the merits-based question under a zone-of-interests challenge is whether the plaintiff "has a cause of action under the statute" and such doctrine "requires [the court] to determine the meaning of the congressionally enacted provision creating a cause of action [utilizing traditional principles of statutory interpretation]." 134 S. Ct. at 1387, 1388; *see also Lexmark*, 134 S. Ct. at 1387 n.4 (pointing out that "the absence of a valid (as opposed to [an] arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case" (internal quotation marks omitted) (alteration added) (emphasis in original) (quoting *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S.

## IV.  Conclusion

Thus, Compass's Motion is **DENIED**. Further, the stay of this action is **HEREBY LIFTED** and the parties are **HEREBY ORDERED** to file their report of parties' planning meeting within 14 days of the entry date of this decision.

**DONE** and **ORDERED** this the 3rd day of November, 2017.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

635, 642-43 (2002)) (quoting in turn *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 89 (1998))).